NATIONAL SURETY CO. v. ATASCOSA ICE, WATER & LIGHT CO.    (No. 423–3519.)

(Commission of Appeals of Texas, Section B. June 24, 1925.)

1. Appeal and error ⟨⟩878(1)—Judgment of Court of Civil Appeals adverse to defendant in error final, where defendant in error made no motion for rehearing, nor filed petition for writ of error.

Where defendant in error, made no motion for rehearing, nor filed any petition for writ of error from adverse judgment of Court of Civil Appeals, such judgment is final, and suit of defendant in error against plaintiff in error stands dismissed by final action of Court of Civil Appeals.

2. Parties ⟨⟩51(4)—Suit by depositor against bank for cashier's defalcations held properly joined with bank's cross-action against cashier's surety.

In depositor's action against bank for deposits wrongfully abstracted and misappropriated by bank's cashier, held that bank was properly permitted by cross-action to join surety on cashier's bond, where, under the pleadings and proof, the same evidence which authorized recovery by depositor against bank likewise authorized recovery by latter against surety.

Error to Court of Civil Appeals of the Fourth Supreme Judicial District.

Suit by the Atascosa Ice, Water & Light Company against the Atascosa County State Bank, in which defendant filed answer, mak-

ing the National Surety Company a party, and seeking judgment over against it. The Court of Civil Appeals rendered judgment (222 S. W. 597), affirming judgment for plaintiff as to the Bank, but reversing as to the Surety Company, and affirming, as reformed, a judgment for the Bank against the Surety Company, and the Surety Company brings error. Affirmed.

E. L. Early and Black & Smedley, all of Austin, for plaintiff in error.

Jas. A. Waltom, of Jourdanton, and Martin J. Arnold, of 'San Antonio, for defendant in error. '

POWELL, P. J. In stating the nature of this case, we quote as follows from the opinion of the Court of Civil Appeals, written by Justice Cobbs:

"This suit was filed in the district court of Atascosa county, Tex., by the ·Atascosa Ice, Water & Light Company, originally against only the Atascosa County State Bank, plaintiff, seeking to recover from said bank judgment for $7,182 alleged to have been deposited by it with said bank, and payment of which amount had been refused by said bank. The bank filed its answer, making the National Surety Company a party, and seeking judgment over against it for any amount that might be recovered against the bank by the plaintiff. Later the plaintiff amended its petition, and made the National Surety Company a party.

"Trial before the court, without a jury, resulted in a judgment in favor of the plaintiff, Atascosa Ice, Water & Light Company, against both defendants for the sum of $7,036.30, with 6 per cent. interest thereon from date of said judgment, and in judgment in favor of the defendant, Atascosa County State Bank, over against the National Surety Company for so much of the judgment in favor of the plaintiff as said bank should have to pay."

From this judgment of the district court the bank did not appeal. Plaintiff in error alone appealed. Upon that appeal the Court of Civil Appeals in its opinion affirmed the judgment of the district court except in the following respect: ·

"We do not believe the appellee, the water works company, alleged or proved a cause of action against the appellant, the surety company, entitling it to hold appellant in this suit for any recovery against it, for it is not alleged, claimed, or shown that the bank is insolvent and rendered unable to respond and ·pay its said obligation by reason of any of the alleged wrongful acts of Witt resulting in the insolvency of and inability of the bank to pay its said obligation.

"The misapplication or abstraction of the money of the bank would not affect appellee's right to recover from the bank, unless, as stated, it rendered the bank unable to pay. In such case it might be held that the acts of .Witt caused loss to the depositor; but here, as· stated, there is no pleading or evidence to that effect. Therefore this assignment is sustained.

"The judgment in favor of the waterworks company, appellee, against ·the surety company, appellant, is reversed, and judgment rendered dismissing the suit of the waterworks company against the surety company. In all other respects the judgment is affirmed."

[1] Upon this adverse judgment of the Court of Civil Appeals defendant in error made no motion for rehearing nor filed any petition for writ of error. Therefore that judgment is final, and the suit of defendant in error as against plaintiff in error stands dismissed by final action of the Court of Civil Appeals. See West v. Carlisle, 111 Tex. 529, 241 S. W. 471, distinguishing Holland v. Nimitz, 111 Tex. 419, 232 S. W. 298, 239 S. W. 185.

But plaintiff in error did file a motion for rehearing against aforesaid judgment of the Court of Civil Appeals. That court, considering that motion, granted it because of the error of the trial court in permitting a recovery of a certain sum of $1,300 discussed in the opinion. In that second opinion the court modified its former judgment to the extent of setting aside the judgment affirming the recovery of the bank against plaintiff in error, and remanding the cause for another trial as between those two parties.

Against this second judgment of the Court of Civil Appeals the bank filed a motion for rehearing, offering a remittitur covering this $1,300 item. The court accepted that offer, and set aside its second judgment just set out by us, and proceeded to render judgment for $5,736.30 in favor of the bank and against plaintiff in error. All of these opinions of the Court of Civil Appeals can be found in 222 S. W. 597.

Against this final judgment of the Court of Civil Appeals plaintiff in error filed a motion for rehearing, which was overruled. Thereupon its petition for writ of error was granted by the Supreme Court.

The pleadings of the parties and all details of the case are stated at considerable length by the Court of Civil Appeals in its opinion. We shall not repeat that· statement here, but will content ourselves with giving only such statement as affects the controlling question now in the case.

When the bank impleaded the surety company, alleging it had a bond from the latter agreeing to pay, up to a certain amount, the bank's losses due to any wrongful abstraction and willful misapplication of money by its cashier, Witt, the surety company, in due season, filed the following plea in abatement to such cross-action:

"Defendant pleads in abatement of the cross-action filed against it by the defendant Atascosa County State Bank, and shows that said cross-action cannot be maintained in this suit because of the following facts:

"(a) That this suit was filed by the plaintiff, Atascosa Ice, Water & Light Company, against the Atascosa County State Bank to recover

$7,132 alleged to have been deposited by the said plaintiff in the defendant's bank in the usual course of business, and not withdrawn, and payment of which, though duly demanded, has been refused by the bank; that this cause of action asserted by the plaintiff was simply to recover a debt alleged to be due by the bank, and to enforce the implied obligation or contract existing between the plaintiff, a depositor, and the defendant bank; that on the other hand the cross-action filed herein by the defendant bank against this defendant is based upon the alleged wrongful abstraction and willful misapplication of certain moneys belonging to the defendant bank by its cashier, R. L. Witt, said cashier being alleged to have been bonded by this defendant; that, in order to show liability of this defendant, it will be necessary to prove that its alleged principal, Witt, had committed a tort with respect to the money or property of the defendant bank, that is to say, had willfully abstracted or willfully misapplied the same; that, as it appears from the plaintiff's petition as well as from the defendant bank's cross-action, this defendant has no interest in the plaintiff's suit against the bank, and there is no privity between the plaintiff and this defendant, and no right of action in favor of the plaintiff against this defendant, and the alleged cause of action of the plaintiff against the bank on the one hand and the alleged cause of action of the bank against this defendant on the other are wholly distinct in legal character and arise out of different states of fact, depend for their support on different proof, and exist between different parties, and cannot be legally joined or prosecuted in the same action.

"(b) Wherefore this defendant shows to the court that there is a misjoinder of parties and misjoinder of causes of action resulting from the cross-action set up by the defendant bank against this defendant, and this defendant accordingly pleads said misjoinder of parties and misjoinder of causes of action by way of abatement of the said cross-action, and prays that this plea in abatement be sustained, and that this defendant be dismissed, and recover of and from the defendant bank its costs in the premises and for general relief."

[2] This plea in abatement or demurrer was overruled and proper exception reserved by plaintiff in error. The surety company was held in the suit by the district court, and this action was approved by the Court of Civil Appeals. Still the surety company continues to contend that its plea should have been sustained. Whether it should or not is the controlling question upon this appeal. Plaintiff in error contends that in overruling this plea in abatement the Court of Civil Appeals is in direct conflict with the decision of our Supreme Court in the case of U. S. Fidelity & Guaranty Co. v. Fossati, 97 Tex. 497, 80 S. W. 74. Is this contention correct? We think not. Why do we reach that conclusion?

In the Fossati Case the state was plaintiff against a defaulting sheriff and tax collector and the sureties on his bond. The sureties impleaded the U. S. Fidelity & Guaranty Company, averring "in effect that the sum sued for by the state was covered by this bond, and that the same was due the sureties by virtue of the terms of the bond in the event the state should recover against the sureties."

Upon being so impleaded, the Fidelity & Guaranty Company interposed a special demurrer as follows:

"Because the two cases sought to be tried together, by the action of the sureties in calling in this defendant by their cross-action, are distinct and severable causes of action, the case made by the state being a simple suit in debt on an account for the shortage against W. R. Callender, in which the sureties are made defendants on their bond to the state in which they undertake that Callender shall pay to the state the money he received, while the suit by the sureties against this defendant is a suit upon an indemnity bond, in which this defendant only guarantees against costs, losses, damages and expenses which the sureties may suffer by reason of any act of fraud or dishonesty of the said Callender, amounting to larceny or embezzlement, and before the sureties shall have any right of recovery against this defendant, they are required to show crime committed by W. R. Callender, a question which must be decided under different rules of evidence from those governing the admissibility of evidence in the case brought by the state against the sureties. The cause of action in both cases does not arise out of the same act, nor is there any community of liability between the defendants in both suits."

That demurrer was overruled by the trial court. The Court of Civil Appeals certified to the Supreme Court the question:

"Did the trial court err in overruling the special demurrer interposed by the Fidelity & Guaranty Company, as above stated, to the cross-action of the sureties on Callender's bond against it?"

The Supreme Court answered that question in the affirmative.

In the Fossati Case the court did not overrule or in any way modify its former opinion in the case of Skipwith v. Hurt, 94 Tex. 322, 60 S. W. 423. The personnel of the court was exactly the same when these two decisions were written. In the latter case the Supreme Court reversed the Court of Civil Appeals and affirmed the district court, which had ruled there was no misjoinder. After very careful consideration, we think the case at bar is similar, in all substantial respects, to the Skipwith Case rather than the Fossati Case. We have already stated the nature of the latter. What was the nature of the Skipwith Case?

Skipwith was county treasurer of Clay county. He failed to pay over to his successor the amount of money which his report showed to be due. Whereupon Hurt, as county judge, sued Skipwith and the sureties on his bond for this shortage. The sureties im-

pleaded the Farmers National Bank of Henrietta, alleging that Skipwith had kept his official account with that bank, and that the latter had knowingly applied those county funds to the payment of a personal debt owing it by Skipwith.

Although there was no privity of contract in the Skipwith Case between the bank and other parties to the suit, the court held there was no misjoinder. As stated by the court:

"When the bank appropriated the money to its own use or to the payment of a debt which Skipwith may have contracted in order to receive the money to be counted, it rendered itself liable to Clay county for all of the fund so used."

Therefore Clay county had the right to sue the bank itself. Not having chosen to do so, the sureties had a right, at least in the absence of any protest by Clay county, to bring the bank into the case and settle all questions in which there was a community of interest in one suit. In other words, the sureties, as well as the county, had a cause of action against the bank, all arising out of the same transaction. That transaction was the wrongful taking of the county's money in Skipwith's hands. The sureties and the bank were all liable for the one subject-matter of the suit—the money wrongfully appropriated as aforesaid. The shortage was due to this one act. It could be due to nothing else under the pleadings in the Skipwith Case. Liability of sureties necessarily involved liability of the bank.

This exact situation is true in the case at bar. Both the bank and light company, in separate pleadings, alleged that the amount due on the company's deposit was the sum of money paid out by the bank wrongfully on Witt's checks definitely described. In other words, the loss to the light company was due solely and only to the payment by the bank of these checks issued fraudulently by Witt in the company's name. Clearly, if the bank owed the company any money, under the pleadings and proof in this case, it was the very amount which Witt had wrongfully withdrawn by the process he adopted. Against such wrongful withdrawal of funds by Witt the bank was insured. And, the policy in suit was not only for the benefit of the bank, but expressly also for the benefit of any one else damaged by reason of such wrongful withdrawal of funds. The very same proof which showed a given amount due the light company necessarily authorized recovery from the surety company by the bank. It is not a case, like the Fossati Case, where recovery against the bank might or might not have led to recovery by the bank against the surety company. Witt was cashier of the bank, in complete charge of its funds. He was also a large stockholder in the light company, and handled its funds. He drew checks in its name. His one way to get money

fraudulently, so far as the pleadings in this case show, was to draw the bank's money out on checks wrongfully drawn by him in the light company's name. At the very instant he in that way took the money from the bank's vaults wrongfully and appropriated it himself he also damaged the light company in that very amount. He seems to have taken several thousand dollars in that way. He had left the county, a fugitive from justice, and did not testify. The lower courts, so far as the final judgment of the Court of Civil Appeals is concerned, are in accord upon the facts. They find that this amount due on the deposit was the result of the wrongful withdrawal of funds by Witt. Under the pleadings and proof, the same evidence which authorizes recovery by the company against the bank likewise authorizes recovery by the latter against the surety company. Under the rule laid down in the Skipwith Case there was no misjoinder.

In the case at bar the bank had protected itself against a loss of the kind here involved, and also its depositors. Under the contract the bank had the right to have the surety company brought into the case and answer to it for a recovery against it by a depositor where such recovery was based upon the wrongful acts of its cashier. There was a privity of contract expressly provided for in this case.

It is difficult to lay down a general rule in cases of this kind. In the Skipwith Case Judge Brown said:

"In the case of Love v. Keowne, cited above, the court said: 'It has been found impracticable to lay down any positive general rule as to what will or what will not constitute multifariousness, but the courts have wisely left the question as one of convenience, to be decided according to the peculiar circumstances of the case. Every case must be governed by its own circumstances, and, as they are as diversified as the names of the parties, the court must exercise a sound discretion on the subject.' The general doctrine of our courts is that the rights of all parties in the subject of litigation may and should be settled in one suit, within the limitation that parties cannot be so introduced as to prejudice the rights of those who have already commenced the litigation. In this case the facts are so blended and connected as to the rights of the county against these sureties and their rights against the bank that in the trial of the case, the fundamental fact of the liability of Skipwith must be established in the action by the county against the sureties, which would not bind the bank; and if another action were brought by the sureties against the bank, the same issue must be tried anew, whereas the determination of that issue in this action involves but one trial. The act of the bank in misappropriating the money of the county made it primarily liable at the option of the county, but the county having elected not to sue the bank, the sureties ought not to be required to pay the money and await the result of a suit against the bank, but are entitled to settle the whole matter in this action. We can see no

reason why the bank cannot have as fair and just a trial in answer to the plea of the defendants as if it had been an independent proceeding by these sureties against it. It will greatly facilitate the administration of justice to sustain such proceedings and save much of the time of the courts in the investigation of questions of this character, and we believe that upon the broad principles underlying our system of procedure, the action of the district court in overruling the exceptions of the bank was proper and that the Court of Civil Appeals erred in reversing the judgment of the district court upon that ground."

We fail to see how the rights of the surety company in the case at bar could have been prejudiced by the joinder of all parties at interest. In fact, it seems to us that, because of Witt's connection with all the parties to the action, it was better to have every issue between them all settled in one suit. In that way they would confront each other, and promptly pursue any questions which might arise.

In the Fossati Case Judge Williams merely held one thing as follows:

"In order to enforce in this case the right contended for by appellees it would be necessary to hold, without qualification, that in all cases where a judgment against a defendant might give rise to a cause of action in his favor against another he is entitled, as a matter of right, to bring that other into the case. This court has never so held."

In that case he stated that—

"The existence and enforcement of a cause of action by the state against appellees might or might not give to the latter a cause of action against appellant, and this is the only connection between the case of the state against appellees and theirs against appellant."

That one connection, in the absence of "other considerations," did not authorize the joinder, as a matter of right. This is clearly the ruling in the Fossati Case. That ruling does not conflict with the facts or holding in the Skipwith Case. In fact, Judge Williams approves the liberal policy applied in that case. But he states that recovery by the state would not necessarily warrant a recovery by the sureties against the Fidelity & Guaranty Company. The proof required for each recovery might be entirely different.

Judge Williams goes on to say that his holding in the Fossati Case, already quoted by us, would not apply, if other considerations were present. We think other circumstances were clearly present in the case at bar, and, as already stated, a recovery by the light company against the bank necessarily authorized a recovery by the latter against the surety company. In that way, surely, the case is entirely different from the Fossati Case.

It should be observed that Judge Williams held that the joinder in the Fossati Case would prejudice the rights of the parties. Where that is true, under the Skipwith Case and all others, no joinder would be authorized. Judge Brown clearly shows that in his opinion.

A multiplicity of suits should always be avoided where possible. Since we do not believe any prejudice could have resulted from the joinder in the case at bar, and since there was a community of interests between the various parties, and since the suit was dependent upon the very same transactions by the same man, we think the Court of Civil Appeals properly overruled the plea in abatement or demurrer, and held there was no misjoinder.

On pages 7, 8, and 9 of its original opinion, the Court of Civil Appeals gives its views as to why the rule in the Fossati Case does not apply here. We concur in those views.

The application contains other assignments. But, we think, they are without merit. Most of them raise fact questions. The lower courts are in accord on the facts sustaining the final judgment of the Court of Civil Appeals. Against that judgment, neither the light company nor bank make any protest. We are not prepared to say that there is no evidence sustaining those fact findings by the lower courts.

Therefore we recommend that the judgment of the Court of Civil Appeals be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.